UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT "BOBBY" HOPKINS, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE WYKAGYL COUNTRY CLUB,<br><br>Defendant. | ECF CASE<br><br>No.:_____<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Robert "Bobby" Hopkins, on behalf of himself and all others similarly situated, hereby alleges through his attorneys, Lipsky Lowe LLP, as against Defendant The Wykagyl Country Club as follows:

## NATURE OF THE ACTION

1.      Wykagyl Country Club is a private golf club.

2.      Plaintiff Hopkins worked for Wykagyl Country Club as a Golf Caddy.

3.      Plaintiff Hopkins asserts, on his behalf and other similarly situated individuals, that Wykagyl Country Club willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to pay the spread-of-hours pay; (iv) failing to provide the N.Y. Lab. Law § 195.1 notice; and (v) failing to provide the N.Y. Lab. Law § 195.3 wage statements.

4.      Plaintiff Hopkins asserts, on his behalf and other similarly situated individuals, that Wykagyl Country Club willfully violated the Fair Labor Standards Act by (i) failing to pay the minimum wage and (ii) failing to pay overtime premium pay.

5.      Plaintiff Hopkins asserts an individual retaliation claim under the Labor Law.

## JURISDICTION & VENUE

6.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 1337 and 1343, supplemental jurisdiction over the Labor Law claims under 28 U.S.C. § 1367, and jurisdiction over the FLSA claims under 29 U.S.C. § 216(b).

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

8.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

9.      Plaintiff Hopkins was and is, at all relevant times, an adult individual residing in the State of New York.

10.      Wykagyl Country Club is, upon information and belief, a domestic non-profit corporation that is organized under New York law and is authorized to do business in the State of New York. Its principal place of business is at 1195 North Avenue, New Rochelle, New York.

11.      Wykagyl Country Club, at all relevant times, employed Plaintiff Hopkins and the Class and Collective Action Members (as defined below).

12.      Upon information and belief, Wykagyl Country Club is an enterprise engaged in commerce or in the production of goods for commerce. Wykagyl Country Club is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of

business is at least $500,000. These goods and services include computers, glassware, and golf shirts.

STATEMENT OF FACTS

Background[1]

13.    Wykagyl Country Club is a private golf club in New Rochelle, New York.

14.    Wykagyl Country Club was incorporated in 1898 and its current golf course dates back to 1905.

15.    Wykagyl Country Club has hosted several events, including the Palm Beach Round Robin from 1948 through 1952, 1956 and 1957, the Red Cross Tournament in 1944, the LPGA Talk Tournament in 1977, the LPGA Golden Lights Championship from 1978 through 1980, the LPGA Chrysler - Plymouth Classic in 1982, the LPGA Master Card International Pro-Am in 1984, the Japan Airlines Big Apple Classic from 1990 through 2000, the LPGA Sybase Classic from 2001 through 2006, and the 2007 HSBC Women's World Match Play Championship.

16.    Wykagyl Country Club is a private club that requires a one-time initiation fee and annual dues.

17.    Wykagyl Country Club has 250-300 members.

18.    Wykagyl Country Club employs Golf Caddies during the golf season: late March to December, weather dependent.

19.    Wykagyl Country Club employs approximately 60 Golf Caddies at any one time.

---

[1] The headers are only for organizational purposes.

20.     Wykagyl Country Club, at all relevant times, employs an individual in the "Caddy Master" position.

21.     Wykagyl Country Club's Caddy Master has numerous responsibilities and duties concerning Golf Caddies, including pairing them with a golfer, supervising them, hiring and firing them, interviewing them, scheduling them, determining whether they will work on a particular day, disciplining them, setting the time of day by when they must report to the Club, telling them when they are done working for the day, and discussing with Golf Caddies when a member complains about them.

22.     In a February 26, 2019 post on GlassDoor, an individual describes the interview process: "I applied in-person. The process took 2 days . . . you go in and talk to the caddie master and pro shop members and see if you're the right fit."

23.     Wykagyl Country Club requires its Golf Caddies to wear the same uniform: green bib with the Club's insignia and Caddy's name, white shirt and khaki shorts. The Club provides the bib.

24.     With this level of control over them, Golf Caddies are not free from control or direction over their performance.

25.     The Golf Caddy's work is squarely within, intertwined with and integral with the usual course of business and services that Wykagyl Country Club offers: golf.

26.     Golf Caddies are an intricate part of the experience of playing a round of golf at Wykagyl Country Club.

27.     Wykagyl Country Club requires golfers to use golf caddies if they are in a three-some or more.

28.     About 90% of golfers at Wykagyl Country Club use a Golf Caddy.

29.     Wykagyl Country Club's Golf Caddies often work exclusively at the Club for multiple continuous years during the golf season.

30.     Golf Caddies must be on Wykagyl Country Club property for the Caddy Master to assign them.

31.     The strong majority of golfers do not know what Golf Caddy will be assigned to them until the Caddy Master assigns them.

32.     If a Golf Caddy cannot, for whatever reason, do the loop after being assigned to a golfer, it is the Caddy Master, not the Golf Caddy, who finds a replacement.

33.     Wykagyl Country Club has a caddy appreciation day when the Club allows the Golf Caddies to play a round and provides a catered lunch for the Golf Caddies.

Duties

34.     Golf Caddies' duties involve carrying the golf bag for one or two golfers (i.e., doing a "loop").

35.     Wykagyl Country Club requires the Golf Caddies to carry the golfers' bags on foot.

36.     In addition to carrying the golfers' golf bags, Golf Caddies are required to find, identify and retrieve golfers' golf balls, clean the golfers' clubs and balls, correct divots on the golf course, rake sand traps after use, remove the flag from the hole on the putting green, and provide the golfers, when asked, with suggestions on what club to use and information on the course.

37.     The Golf Caddies perform all of their duties on Wykagyl Country Club property.

Hours and Days Worked

38.     When caddies arrive at Wykagyl Country Club, they are required to sign and check in with the Caddy Master so the Caddy Master knows they are available to be assigned to a golfer.

39.     Golf Caddies typically arrive at the Club around 7:00 a.m.

40.     Golf Caddies typically stop working at the Club between 4:00 p.m. and 6:00 p.m., largely depending on when it gets dark.

41.     Golf Caddies typically work 6 days a week, 7 days if there is an outing at the Club.

42.     Golf Caddies typically work at least 54 hours a week.

43.     A round of golf at Wykagyl Country Club is typically between 4 and 4.5 hours.

44.     Golf Caddies will, typically, caddy 1 or 2 rounds each day.

45.     The Caddy Master decides how many rounds of golf a Golf Caddy will work in any given day.

46.     The Caddy Master possesses and exercises meaningful discretion in rewarding and punishing Golf Caddies.

47.     The Caddy Master rewards Golf Caddies who regularly arrive early by quickly assigning them a golfer in the morning and then assigning them another golfer later in the day.

48.     Golf Caddies who take early morning loops are much more likely to be assigned an afternoon round by the Caddy Master,  which results in the Caddies receiving more compensation[2].

49.     The Caddy Master often penalizes Golf Caddies who refuse loops or miss their tee time by firing them or not assigning them a loop that day.

50.     Every morning when Golf Caddies arrive, they have to sign in by the Caddy Master and then wait for the Caddy Master to assign them.

51.     An event sheet exists in the Golf Caddy waiting area, that lists tournaments and other events when the Club mandates attendance by the Golf Caddies.

52.     The Caddy Master will send weekly emails to the Golf Caddies telling them about Club events.

53.     During tournaments, Wykagyl Country Club requires all of the Golf Caddies to work those days.

Compensation and Statutory Requirements

54.     Wykagyl Country Club does not pay its Golf Caddies any hourly rate.

55.     When the Golf Caddies work more than 40 hours in a week, Wykagyl Country Club does not pay them overtime premium pay: 1.5 times their hourly rate.

56.     The only compensation that the Golf Caddies receive comes from the golfers.

57.     Golf Caddies are typically assigned two golfers per loop.

58.     Golfers pay the Golf Caddies a $120 fee per each golf bag they carry.

---

[2] In using the term "compensation, Plaintiff does not concede the money the Class and Collective Action Members and he receives from the golfers constitutes compensation or remuneration from the Club. The term is used for ease of reference.

59.     Wykagyl Country Club determines the fee per golf bag.

60.     Golf Caddies have no input or ability to change the fee per bag.

61.     Golf Caddies are not permitted to negotiate the bag fee.

62.     Tipping Golf Caddies is at the golfers' discretion, with golfers tipping the Golf Caddies various amounts.

63.     Golfers often, but not always, tip the Golf Caddies.

64.     The bag fee and tips are Golf Caddies' sole compensation.

65.     Wykagyl Country Club does not pay Golf Caddies for the time they spend waiting for the Caddy Master to assign them a golfer.

66.     Wykagyl Country Club does not pay Golf Caddies spread-of-hours pay: an extra hour of pay at the minimum wage when they work more than 10 hours.

67.     Wykagyl Country Club does not provide its Golf Caddies with any wage statements.

68.     Wykagyl Country Club does not provide its Golf Caddies with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1.

69.     Wykagyl Country Club never notified, verbally or in writing, it considers its Golf Caddies to be tipped employees and that it was claiming a tip credit against the minimum wage.

70.     No agreement exists between Wykagyl Country Club and its Golf Caddies that the bag fees or gratuities would count towards Wykagyl Country Club's obligation to pay them a minimum wage and overtime.

71.     Wykagyl Country Club does not keep records of how much in bag fees are paid to its Golf Caddies. It does not track which Golf Caddies are paid bag fees and tips;

it does not invoice the golfers for this compensation; and it does not ensure that the golfers pay either the bag fee or tips.

72.     Wykagyl Country Club does not keep records of when its Golf Caddies start and stop working on each day.

73.     Wykagyl Country Club does not post a poster that advises its Golf Caddies of their right to a minimum wage and overtime.

<u>Bobby Hopkins</u>

74.     Wykagyl Country Club employed Plaintiff Hopkins as a Golf Caddy from 1993 to November 2022.

75.     While working as a Golf Caddy for Wykagyl Country Club, Plaintiff Hopkins did not work at any other club during its season.

76.     During the golf season, Plaintiff Hopkins worked 6-7 days a week at Wykagyl Country Club.

77.     Plaintiff Hopkins regularly worked from 6:30 a.m. to between 4:00 and 6:00 p.m., working 10 hour days and between 57 and 69 hours per week.

78.     Wykagyl Country Club did not pay Plaintiff Hopkins any hourly rate during his employment with the Club.

79.     The sole compensation Plaintiff Hopkins received during his employment with Wykagyl Country Club came from the golfers: the bag fees and tips.

80.     Wykagyl Country Club did not pay Plaintiff Hopkins the statutory minimum wage.

81.     Wykagyl Country Club did not pay Plaintiff Hopkins overtime premium pay.

82.     Wykagyl Country Club did not pay Plaintiff Hopkins spread-of-hours pay.

83.     Wykagyl Country Club did not provide Plaintiff Hopkins with any wage statements.

84.     Wykagyl Country Club did not provide Plaintiff Hopkins with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1.

85.     Plaintiff Hopkins is subject to the same policies, procedures, control and oversight that other Wykagyl Country Club Golf Caddies were subjected to.

86.     Plaintiff Hopkins knows from personal conversations and observations that he performed the same duties as other Golf Caddies, worked approximately the same hours, was compensated the same way and was subject to the same policies and procedures as them.

Retaliation

87.     On or about October 14, 2022, Plaintiff Hopkins, through counsel, sent a draft complaint to Wykagyl Country Club that asserts the Club willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to pay the spread-of-hours pay; (iv) failing to provide the N.Y. Lab. Law § 195.1 notice; and (v) failing to provide the N.Y. Lab. Law § 195.3 wage statements.

88.     Every Wykagyl Country Club member has an ownership interest in the club.

89.     Wykagyl Country Club, upon information and belief, told many of its members and Golf Caddies about Plaintiff Hopkins' draft complaint.

90.    On or about October 28, 2022, Mark Williams, a golf caddy, approached Plaintiff Hopkins at the Club, stating "You suing the club? What did it ever do to you?"

91.    On or about October 28, 2022 while Plaintiff Hopkins was at Wykagyl Country Club, member called Plaintiff Hopkins a "selfish prick" for suing the club and told Plaintiff Hopkins, "I don't want you in my group ever f*cking again."

92.    On or about November 14, 2022 while Plaintiff Hopkins was at Wykagyl Country Club, Eric Barrage (Golf Committee Chairman) directed member Chuck Del Fiore to approach Plaintiff Hopkins to try to settle the case.

93.    Another member, John Flynn, told Plaintiff Hopkins that he does not want Plaintiff Hopkins to caddy for him because of the contemplated lawsuit.

94.    Other Golf Caddies told him that Club Members were calling him greedy, that they were going to fire him anyway, that he is just digging his own grave, and how could he (i.e., Plaintiff Hopkins) turn his back on the Members.

95.    The retaliation and harassment Plaintiff Hopkins has endured has caused him emotional distress, including stress and anxiety.

## CLASS ACTION ALLEGATIONS

96.    Plaintiff Hopkins asserts these allegations and claims on his own and on behalf of a class of persons under Fed. R. Civ P. 23:

> All persons who work or have worked as Golf Caddies at Wykagyl Country Club at any time between December 8, 2016 and the entry of judgment in this case (the "Class Members").

97.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and

the facts on which the calculation of that number are presently within Wykagyl Country Club's sole control, upon information and belief, more than 100 Class Members exist.

98.    Plaintiff Hopkins' claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in court against a corporate defendant.

99.    Wykagyl Country Club has acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

100.    Plaintiff Hopkins is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

101.    Plaintiff Hopkins has the same interest in this matter as all other Class Members and his claims are typical of Class Members'.

102.    Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including:

      a.    Whether Wykagyl Country Club employed the Class Members within the meaning of the Labor Law;

      b.    Whether Wykagyl Country Club misclassified the Class Members as independent contractors;

      c.    Whether Wykagyl Country Club failed or refused to pay the Class Members the statutory minimum wage;

d.      Whether Wykagyl Country Club failed or refused to pay the Class Members overtime premium pay for all hours worked in excess of 40 hours per workweek;

e.      Whether Wykagyl Country Club failed or refused to pay the Class Members spread-of-hours pay;

f.      Whether Wykagyl Country Club failed or refused to provide the Class Members the N.Y. Lab. Law § 195.1 Notice;

g.      Whether Wykagyl Country Club failed or refused to provide the Class Members the N.Y. Lab. Law § 195.3 Wage Statements;

h.      Whether Wykagyl Country Club willfully or recklessly violated the Labor Law;

i.      Whether Wykagyl Country Club is liable for all damages claimed hereunder, including interest, costs and disbursements and attorneys' fees; and

j.      Whether Wykagyl Country Club should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

103.    Under 29 U.S.C. § 206, Plaintiff Hopkins seeks to assert these allegations and claims as a collective action on behalf of a defined group:

> All persons who work or have worked as Golf Caddies at Wykagyl Country Club at any time between December 8, 2019 and the entry of judgment in this case (the "Collective Action Members").

104.    Plaintiff Hopkins and the Collective Action Members are similarly situated on several legal and factual issues, including:

a.      Wykagyl Country Club employed the Collective Action Members within the meaning of the FLSA;

b.      Collective Action Members performed similar duties;

c.      Wykagyl Country Club failed to keep true and accurate time records for all hours Plaintiff Hopkins and the Collective Action Members worked;

d.      Wykagyl Country Club willfully or recklessly violated the FLSA;

e.      Wykagyl Country Club should be enjoined from such violations of the FLSA in the future; and

f.      The statute of limitations should be estopped or equitably tolled due to Wykagyl Country Club's statutory violations.

<u>FIRST CAUSE OF ACTION</u>
FAILURE TO PAY THE OVERTIME PREMIUM PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Hopkins and the Class Action Members)

105.    Plaintiff Hopkins, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

106.    Wykagyl Country Club is an "employer" within the meaning of Labor Law §§ 190, 196-d, 651(5), 652 and supporting New York Statement Department of Labor Regulations and employed Plaintiff Hopkins and the Class Members.

107.    Plaintiff Hopkins and the Class Members are "employees" within the meaning of the Labor Law.

108.    Wykagyl Country Club misclassified the Golf Caddies as independent contractors when they should have been classified as employees.

109.    Wykagyl Country Club has more than 11 employees.

110.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Wykagyl Country Club is required to pay Plaintiff Hopkins and the Class Members 1.5 times their regular rate of pay for all hours they worked in excess of 40.

111.    Wykagyl Country Club failed to pay Plaintiff Hopkins and the Class Members overtime premium pay for any hour they worked above 40 in a week, violating the Labor Law. N.Y. Lab. Law § 650.

112.    Wykagyl Country Club willfully violated Plaintiff Hopkins and the Class Members' rights by failing to pay them overtime compensation at rates not less than 1.5 times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, violating the New York Labor Law and its regulations.

113.    Wykagyl Country Club failed to pay the Class Members the overtime wages to which they were entitled, violating the Labor Law.

114.    Wykagyl Country Club willfully violated the Labor Law by knowingly and intentionally failing to pay the Class Members overtime wages.

115.    Pursuant to the Labor Law, Plaintiff Hopkins and the Class Members are entitled to recover from Wykagyl Country Club their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

SECOND CAUSE OF ACTION
FAILURE TO PAY MINIMUM WAGE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Hopkins and the Class Action Members)

116.    Plaintiff Hopkins, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

117.    Under the Labor Law, Wykagyl Country Club was and is required to pay Plaintiff Hopkins and the Class Members the statutory minimum wage. N.Y. Lab. Law § 652.

118.    Wykagyl Country Club failed to pay Plaintiff Hopkins and the Class Members the minimum wage, violating the Labor Law.

119.    Wykagyl Country Club willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff Hopkins and Class Members the minimum wage.

120.    Pursuant to the Labor Law, Plaintiff Hopkins and the Class Members are entitled to recover from Wykagyl Country Club their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

THIRD CAUSE OF ACTION
FAILURE TO PAY SPREAD-OF-HOURS PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Hopkins and the Class Action Members)

121.    Plaintiff Hopkins, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

122.    Wykagyl Country Club willfully failed to pay Plaintiff Hopkins and the Class Members one additional hour at the minimum wage rate for each day they worked ten or more hours, violating 12 N.Y.C.R.R. § 146.-1.6.

123.    Due to Wykagyl Country Club's Labor Law violations, Plaintiff Hopkins and the Class Members are entitled to recover from Wykagyl Country Club their unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### FAILURE TO PROVIDE 195.1 NOTICE
### UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Hopkins and the Class Action Members)

124.    Plaintiff Hopkins, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

125.    Wykagyl Country Club willfully failed to supply Plaintiff Hopkins and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under § 195.1(a) within 10 business days of their first employment date.

126.    Due to Wykagyl Country Club's violations of N.Y. Lab. Law § 195.1, Plaintiff Hopkins and the Class Members are entitled to recover from Wykagyl Country Club $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-b (2016).

## FIFTH CAUSE OF ACTION
### FAILURE TO PROVIDE 195.3 WAGE STATEMENT
### UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Hopkins and the Class Action Members)

127.    Plaintiff Hopkins, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

128.    Wykagyl Country Club willfully failed to supply Plaintiff Hopkins and the Class Members with an accurate wage statement with each payment of wages, violating N.Y. Lab Law § 195.3.

129.    Due to Wykagyl Country Club's violations of N.Y. Lab Law § 195.3, Plaintiff Hopkins and the Class Members are entitled to recover from Wykagyl Country Club $250.00 for each workday that the violations occurred or continue to occur, or a

total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-d (2016).

SIXTH CAUSE OF ACTION
RETALIATION UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Hopkins)

130.    Plaintiff Hopkins repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

131.    Plaintiff Hopkins is an employee under N.Y. Lab. Law § 215.

132.    Wykagyl Country Club is an employer under N.Y. Lab. Law § 215.

133.    Plaintiff Hopkins, through counsel, complaining about Wykagyl Country Club's Labor Law violations constitutes protected activity under the Labor Law.

134.    Wykagyl Country Club harassed and threatened Plaintiff Hopkins for complaining about its Labor Law violations, violating N.Y. Lab. Law § 215.

135.    The retaliation and harassment Plaintiff Hopkins has endured would deter or dissuade a similar working for making similar complaints.

136.    A causal connection exists between Plaintiff Hopkins' protected conduct and Wykagyl Country Club's threats and harassment of him.

137.    Due to Wykagyl Country Club's Labor Law violations, Plaintiff Hopkins is entitled to recover compensatory damages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

SEVENTH CAUSE OF ACTION
FAILURE TO PAY THE MINIMUM WAGE UNDER THE FLSA
(On Behalf of Plaintiff Hopkins and the Collective Action Members)

138.    Plaintiff Hopkins repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

139.    Wykagyl Country Club has been and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

140.    Wykagyl Country Club employed Plaintiff Hopkins and the Collective Action Members within the meaning of the FLSA.

141.    Wykagyl Country Club knowingly failed to pay Plaintiff Hopkins and the Collective Action Members the minimum wage.

142.    Wykagyl Country Club was required to pay Plaintiff Hopkins and the Collective Action Members the minimum wage rate for all hours worked.

143.    Because Wykagyl Country Club's FLSA violations were willful, a three-year statute of limitations applies under 29 U.S.C. § 255.

144.    As a result of Wykagyl Country Club's FLSA violations, Plaintiff Hopkins and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensations under 29 U.S.C. § 216(b), and such other legal and equitable relief as this Court deems just and proper.

EIGHTH CAUSE OF ACTION
FAILURE TO PAY OVERTIME UNDER THE FLSA
(On Behalf of Plaintiff Hopkins and the Collective Action Members)

145.    Plaintiff Hopkins repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

146.    Wykagyl Country Club was required to pay Plaintiff Hopkins and the Collective Action Members no less than 1.5 times the regular rate at which they were

employed for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

147.    At all relevant times, Wykagyl Country Club had a policy and practice of refusing to pay Plaintiff Hopkins and the Collective Action Members the proper overtime compensation for their hours worked in excess of 40 hours per workweek.

148.    Wykagyl Country Club was aware or should have been aware that the practices described in this Complaint were unlawful, making its violations willful or reckless.

149.    Wykagyl Country Club has not made a good faith effort to comply with the FLSA with respect to Plaintiff Hopkins and the Collective Action Members' compensation.

150.    Wykagyl Country Club has failed to make, keep and preserve records with respect to its employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Hopkins respectfully requests this Court grant the following relief:

a.    Certifying this action as a class action under Fed. R. Civ. P. 23 on behalf of the Class Members and appointing Plaintiff Hopkins and Lipsky Lowe LLP to represent the Class Members;

b.      Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff Hopkins and his counsel to represent the Collective Action Members and tolling of the statute of limitations;

c.      An award for unpaid overtime premium pay under the Labor Law and the FLSA;

d.      An award for unpaid minimum wage under the Labor Law and the FLSA;

e.      An award of statutory penalties for failing to provide the N.Y. Lab. Law § 195.1 Notice;

f.      An award of statutory penalties for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

g.      An award of liquidated damages as a result of Wykagyl Country Club's Labor Law violations;

h.      An award of compensatory damages for Plaintiff Hopkins' individual retaliation claim;

i.      Equitably tolling the statute of limitations under the FLSA;

j.      An award of pre-judgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.      Such other and further relief as this Court deems just and proper.


## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Hopkins demands a trial by jury on all

questions of fact the Complaint raises.


Dated:  New York, New York
        December 8, 2022

s/ Douglas B. Lipsky
Douglas B. Lipsky
LIPSKY LOWE LLP
420 Lexington Avenue, Suite 1830
New York, New York 10170
Doug@lipskylowe.com
212.392.4772
*Attorneys for Plaintiff Hopkins and all
similarly situated persons*